UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF ENVIRONMENTAL PROTECTION,
Plaintiff

v.

BWX TECHNOLOGIES, INC.; THE BABCOCK & WILCOX COMPANY; and KISKI VALLEY WATER POLLUTION CONTROL AUTHORITY,
Defendants

CIVIL ACTION NO. 06-1135

## CONSENT DECREE

The Plaintiff and the Defendants to this action (collectively, the "Parties") agree as set forth herein.

## I. BACKGROUND

***Parties & Court Proceedings***

A. Plaintiff, the Commonwealth of Pennsylvania, Department of Environmental Protection ("Department") is the executive agency of the Commonwealth of Pennsylvania with the duty and authority to administer and enforce the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, *as amended*, 42 U.S.C. §§ 9601-9675 ("CERCLA"), and the environmental laws of the Commonwealth of Pennsylvania, including but not limited to the Clean Streams Law, 35 P.S. §§ 691.1 – 691.1001; the Solid Waste Management Act, 35 P.S. §§ 6018.101 – 6018.1003 ("SWMA"); the Hazardous Sites Cleanup Act, 35 P.S. §§ 6020.101 – 6020.1305 ("HSCA"); and Section 1917-A of the Administrative Code of 1929, 71 P.S. § 510-17 (collectively, "the Pennsylvania Environmental

Statutes").

B. Defendant BWX Technologies, Inc. ("BWXT") is a corporation organized under the laws of the State of Delaware, with corporate headquarters at 2016 Mt. Athos Road, Lynchburg, Virginia 24504, and at relevant times did business within this judicial district.

C. Defendant The Babcock & Wilcox Company ("B&W") is a corporation organized under the laws of the State of Delaware, and at relevant times did business within this judicial district.

D. Defendant Kiski Valley Water Pollution Control Authority ("Authority") is a Pennsylvania municipal authority created and existing under the Pennsylvania Municipality Authorities Act, 53 Pa.C.S. §5601 *et seq.* The Authority has a mailing address of 1361 School Road, Leechburg, Pennsylvania 15656.

E. The Department has filed a Complaint under CERCLA and the Pennsylvania Environmental Statutes against BWXT, B&W and the Authority (collectively, "the Defendants").

F. The Department has filed the Complaint in connection with the Authority's wastewater treatment plant and ash lagoon ("ash lagoon") located in Allegheny Township, Westmoreland County, Pennsylvania ("Site").

G. The Department's Complaint seeks: (a) reimbursement to the Department for past expenditures / response costs (collectively, "response costs") that the Department has incurred in addressing the release and threatened release of hazardous substances and waste storage and /or disposal at the Site; (b) closure of the ash lagoon under the Pennsylvania Environmental Statutes and other remedial action by the Defendants in response to the release and threatened release of hazardous substances at the Site, consistent with the National Contingency Plan, 40 C.F.R. Part

300, *as amended* ("NCP"); and (c) a declaratory judgment on the Defendants' liability for future response costs that will be binding in any subsequent action to recover future response costs in connection with the Site.

***History re Wastewater Treatment System, Industrial Sewage & Ash Lagoon***

H. The Authority owns and operates a publicly owned wastewater collection and treatment system in Armstrong and Westmoreland Counties, Pennsylvania (the "KVWPCA System"). As part of the KVWPCA System, the Authority owns and operates a wastewater treatment plant on School Road in Allegheny Township, Westmoreland County, Pennsylvania (the "KVWPCA WWTP").

I. B&W formerly owned and operated certain industrial facilities located in Apollo Borough, Armstrong County, Pennsylvania (the "Apollo Facility") and Parks Township, Armstrong County, Pennsylvania (the "Parks Facility"). The Apollo Facility and Parks Facility were previously owned and operated by the Nuclear Material and Equipment Company, Inc. ("NUMEC"). In November 1971, B&W acquired NUMEC and subsequently NUMEC was merged into B&W.

J. The Apollo Facility and Parks Facility were previously involved in the processing and handling of radioactive materials under licenses issued by the Atomic Energy Commission and Nuclear Regulatory Commission ("NRC") pursuant to the Atomic Energy Act. At both facilities, B&W performed work with radioactive materials, including radioactive materials owned by the United States Government, and work under federal government contract. The Apollo Facility and Parks Facility processed and managed radioactive uranium isotopes and other materials.

K. Industrial and manufacturing operations at the Apollo Facility were terminated in 1983, and the Apollo Facility was decommissioned pursuant to the regulations of the NRC in 1994, followed by NRC termination of the special nuclear materials license on April 14, 1997.

L. Industrial and manufacturing operations at the Parks Facility were terminated in 1993, and the Parks Facility was decommissioned pursuant to regulations of the NRC in 2001, followed by NRC termination of the special nuclear materials license on August 24, 2004.

M. In 1997, B&W transferred to BWXT title to the Apollo Facility and the Parks Facility, along with certain other business assets.

N. Prior to termination of industrial and manufacturing operations at the Apollo Facility and Parks Facility, certain wastewater generated at the Apollo Facility and Parks Facility was discharged, from late 1976 into the 1990's, to the KVWPCA System and was treated at the KVWPCA WWTP. Some of the wastewater generated at the Apollo Facility and/or the Parks Facility contained uranium isotopes.

O. At the KVWPCA WWTP, the Authority has treated wastewater via a biological and chemical wastewater treatment process, producing a sludge containing constituents removed from the wastewater influent.

P. From 1976 until early 1993, as part of the KVWPCA WWTP, the Authority operated an incinerator to incinerate the sludge, producing an ash which was deposited via slurry into the approximately 4000 square meter ash lagoon located on the southerly side of the Site.

Q. There are concentrations of radioactive uranium isotopes in the ash lagoon.

R. The Authority never sought nor obtained any permit from the Department to use the ash lagoon as a solid waste disposal facility. The ash lagoon was only intended and designed to be operated as a temporary storage facility.

S. In 1992, the Authority informed the Department that the ash lagoon would be closed.

T. By Department Order dated November 25, 1992, the Department determined that proper closure of the ash lagoon pursuant to applicable State environmental laws, regulations and standards was necessary to protect the waters of the Commonwealth from potential pollution. The Site is located adjacent to the Kiskiminetas River, a "water of the Commonwealth," as that phrase is defined in the Clean Streams Law.

U. By Department Order dated November 25, 1992, the Department required the Authority to submit a closure plan for the ash lagoon and implement the closure plan after its approval or modification by the Department.

V. The ash within the ash lagoon constitutes "solid waste" as that term is defined in the SWMA, and contains, among other constituents, radioactive uranium isotopes from the wastewater generated at the Apollo Facility and / or Parks Facility that are defined as "hazardous substances" under CERCLA and regulations adopted thereunder by the U.S. Environmental Protection Agency as set forth in 40 C.F.R. §302.4 and Appendix B and HSCA.

***Remediation / Closure of Ash Lagoon through this Consent Decree***

W. The Parties have agreed upon closure / remedial action appropriate for the Site. That closure / remedial action, and the schedule for conducting it, are described in detail in the Approved Closure Plan, as amended herein, which amendments are more particularly described in Exhibits 1, 2 and 3 hereto (collectively, the "Revised Closure Plan").

X. The planning, development and implementation of the closure / remedial action for the Site as described in this Consent Decree has been and will be undertaken in a manner that is consistent with the National Contingency Plan ("NCP"), 40 C.F.R. Part 300. Such closure/remedial action is in substantial compliance with the applicable requirements in 40

C.F.R. §§300.700(c)(5) and (6) and will result in a CERCLA-quality cleanup. Such requirements of the NCP have been satisfied by, among other steps, the following:

(1) A Remedial Investigation and a Feasibility Study, consistent with the NCP, was prepared identifying and evaluating alternatives for the remediation of the ash lagoon.

(2) The Remedial Investigation and the Feasibility Study, together with a proposed Decommissioning Plan, were submitted to the Nuclear Regulatory Commission ("NRC") and the Department for review in 2004.

(3) The NRC subsequently reviewed the proposed Decommissioning Plan, and conducted its own dose assessment of the risks posed by the ash lagoon. In January 2005, the NRC concluded that the doses for both on-site closure and off-site removal of the material in the ash lagoon meet the NRC's criteria for unrestricted use as set forth in 10 C.F.R. Part 20, Subpart E. The effect of the NRC's determination was to relinquish potential NRC jurisdiction regarding remediation and closure of the Site.

(4) Subsequent to the NRC's determination, the Authority submitted to the Department the "Permit Application for Closure of Incinerator Ash Lagoon," dated May 2005, as amended by submissions received by the Department on August 10 and 12, and September 9, 2005 (the "Approved Closure Plan").

(5) As part of the submission and Department review of the Approved Closure Plan, public notice was issued concerning the proposed closure plan, and an opportunity for public comment and a substantial opportunity for public participation was provided. Consistent with 25 Pa. Code §271.131(a), on June 8,

15 and 22, 2005, newspaper notice was published once per week for three consecutive weeks in the *Pittsburgh Post-Gazette*, inviting the submission of public comments within a 60-day period. Consistent with 25 Pa. Code §271.141(d), written notice of the proposed closure plan was provided to the governments of Allegheny County and Westmoreland County, inviting comment within a 60-day period. Written notice of submission of the proposed closure plan was provided to all contiguous landowners consistent with the requirements of 25 Pa. Code § 271.141(b). The Department held a public meeting and hearing concerning the proposed closure plan at the Markle Fire Hall on August 2, 2005, at which testimony was taken. The Department reviewed and considered all comments received prior to approval of the proposed closure plan on October 26, 2005.

(6) The Approved Closure Plan provided for the excavation and removal of the ash and certain associated material (collectively, the "Ash Waste") from the ash lagoon, and placement of that material in a permitted Pennsylvania municipal waste landfill. Subsequent to the approval of the Approved Closure Plan, through the fall and winter of 2005 and spring of 2006, the Authority attempted unsuccessfully to contract with a number of Pennsylvania municipal waste landfill facilities to receive and dispose of the Ash Waste.

(7) In view of the lack of success in timely procuring a disposal commitment from a permitted landfill in Pennsylvania, the Department determined that the Ash Waste should be considered for placement in a permitted out-of-state facility capable of

handling the Ash Waste, and that the Approved Closure Plan should be revised accordingly.

(8) Public notice of the Revised Closure Plan (providing for disposal of the Ash Waste at a permitted out-of-state facility) inviting public comment on the Revised Closure Plan and a public meeting thereon will be provided as set forth in this Consent Decree. The Department will review and consider the public comments received on the Revised Closure Plan.

Y. In order to facilitate prompt implementation of the Revised Closure Plan, the Department will provide contractors to excavate, remove and transport the ash and certain associated material in the ash lagoon to the Alaron facility in Wampum, Pennsylvania and to take certain other actions related to the Site and the Revised Closure Plan to assure protection of the environment, public health and public safety. To resolve this matter promptly and reasonably, the Defendants have agreed to implement all of the tasks required by the Revised Closure Plan, with the exception of the relatively few tasks that the Department will perform.

Z. The Defendants' implementation of the Revised Closure Plan and the Defendants' compliance with this Consent Decree will entitle the Defendants to contribution protection as provided in Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and Section 705(c)(2) of HSCA, 35 P.S. § 6020.705(c)(2).

AA. The Department and the Defendants agree that this Consent Decree is fair, reasonable, in the public interest, and in furtherance of the statutory goals of CERCLA and the Pennsylvania Environmental Statutes and, by means of this Consent Decree, final settlement will be reached, thereby avoiding difficult, prolonged, and complicated litigation between the Department and the Defendants.

BB. The Department and the Defendants agree that prompt entry of this Consent Decree without further litigation and without this Court's adjudication or determination of any issue of fact or law, except as specified herein, is appropriate.

NOW, THEREFORE, before the taking of any testimony, upon the pleadings, without the Court's adjudication or determination of any issue of fact or law, except as specified herein, and upon the consent and agreement of the Parties to this Consent Decree by their attorneys and authorized officials, it is hereby ORDERED, ADJUDGED, and DECREED as follows:

## II. ORDER

1. **Jurisdiction**. This Court has jurisdiction over the Parties, and over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1267 and 42 U.S.C. §§ 9607 and 9613(b). In addition, the Declaratory Judgment Act, 28 U.S.C § 2201, authorizes this Court to grant declaratory relief. The Defendants waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District and shall not challenge this Court's jurisdiction to enter and enforce this Consent Decree. The Parties agree to be bound by the terms of this Consent Decree and agree not to contest its validity in any subsequent proceeding arising from it.

2. **Agreement to Facts and Denial of Liability**. The Defendants agree that the statements in the lettered paragraphs above are true and correct and, in any matter or proceeding involving the Department, no Defendant may challenge the accuracy or validity of these statements. The actions undertaken by the Defendants in accordance with this Consent Decree do not constitute an admission by the Defendants of any violation of state or federal law or an admission of any liability by any Defendant to the Department or any other person or entity. This Consent Decree shall not be used as evidence or as collateral estoppel against the

Defendants in any action or proceeding other than an action or proceeding involving the Department and one or more of the Defendants or their respective successors and assigns.

3. **Definitions**. Unless otherwise expressly provided herein, the terms used in this Consent Decree that are defined in CERCLA or in the Pennsylvania Environmental Statutes or in any federal or state regulation promulgated under those statutes shall have the meaning assigned to them in those statutes or regulations. Whenever terms listed below are used in this Consent Decree, the following definitions shall apply:

"Approved Closure Plan" has the meaning set forth in Background Paragraph X.4 above.

"Approved Disposal Facility" means the permitted US Ecology Texas disposal facility in Robstown, Texas.

"Ash Waste" shall mean the material that the Department will remove from the Authority's ash lagoon, i.e., the ash waste materials in the ash lagoon at the Site and approximately six inches of sub-base materials (having an estimated volume of 12,000 cubic yards).

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601-9675.

"Consent Decree" shall mean this Consent Decree and all Exhibits.

"Defendants" shall mean BWX Technologies, Inc., The Babcock & Wilcox Company and Kiski Valley Water Pollution Control Authority.

"Department" shall mean the Commonwealth of Pennsylvania, Department of Environmental Protection.

"Parties" shall mean the Department and the Defendants.

"Plaintiff" shall mean the Department.

"Response Action" shall mean a response action taken or to be taken by the Department or the Defendants in connection with the release or threatened release of hazardous substances at the Site, including those actions required or taken pursuant to the Approved Closure Plan or Revised Closure Plan.

"Revised Closure Plan" shall mean the Approved Closure Plan, as revised and clarified by this Consent Decree and as set forth in Exhibits 1, 2 and 3, and containing those tasks and completion schedule agreed upon by the Parties as necessary for the closure / remedial action for the Site.

"Site" shall mean the site of the Kiski Valley Water Pollution Control Authority ash lagoon, in Allegheny Township, Westmoreland County, Pennsylvania.

***Implementation of Revised Closure Plan***

4. <u>**Department's Revision of Closure Plan & Public Notice.**</u> Promptly after the execution of this Consent Decree by the Parties, and pursuant to the SWMA, the Department will issue the letter attached to this Consent Decree as Exhibit 1. Pursuant to the SWMA, the Department promptly will provide notice to the public of the revision in the *Pennsylvania Bulletin*. Exhibit 1 amends and clarifies the Authority's Approved Closure Plan, in general as follows:

(a) Those parts of the Approved Closure Plan (Section 5.4 and Section IX) related to the placement of the ash waste in a Pennsylvania municipal waste landfill are deleted.

(b) The Authority is not required to post an additional bond in the amount of $775,097 as stated in condition 14 of the Department's October 26, 2005 letter to the Authority.

(c) The Ash Waste shall be transported via truck to the Alaron transload facility in Wampum, Pennsylvania and thereafter via rail transportation to and disposal at the Approved Disposal Facility.

5. The Defendants shall implement the following tasks described in the Revised Closure Plan, as more specifically set forth in the referenced Sections of the Approved Closure Plan or in Exhibit 1, and in Exhibit 2, in accordance with the schedules set forth in Exhibit 2 (collectively, the "Defendant Work"):

(a) Provision of independent construction quality assurance (Section 5.1 and Exhibit 1)

(b) Lagoon dewatering, lagoon water treatment, provision of clean wash water, and treatment and disposal of decontamination waters and solids, all if and as necessary (Sections 5.1 and 5.2)

(c) Assurance that Alaron will accept at least 2200 cubic yards per week of Ash Waste.

(d) Rail transportation of the Ash Waste from Alaron transload facility in Wampum, Pennsylvania to the Approved Disposal Facility (Exhibit 1)

(e) Arrangement for disposal, receipt by and disposal of the Ash Waste at the Approved Disposal Facility (Exhibit 1)

(f) Removal of discharge piping & other appurtenances from ash lagoon (Section 5.5). (If such discharge piping and appurtenances cannot be successfully decontaminated, such materials shall be disposed of at the Approved Disposal Site or at another permitted facility approved by the Department that is capable of receiving, handling and disposing of such material.)

(g) Testing and demonstration of the attainment of closure and Act 2 standards (Section 5.6)

(h) Backfilling, recontouring, final grading and revegetation of Site (Sections 5.7 and 5.8)

(i) Continued maintenance of temporary erosion & sedimentation control at Site from the time of completion of the work being performed by the Department as referenced in Paragraph 6 through permanent stabilization of the area (Sections 5.9), and establishment of a stabilized vegetative cover in the disturbed former ash lagoon area meeting standard erosion and sedimentation final stabilization criteria (Section 7.5)

(j) Submission of ash lagoon closure certification (Section 5.10)

(k) Implementation of health and safety requirements and any necessary radiological monitoring for the tasks comprising the Defendant Work (Section 5.11, Exhibits 1 and 2)

(l) Performance of post-closure water quality monitoring (Section 7.1)

(m) Examination, repair and maintenance of revegetated areas at Site (Section 7.5)

(n) In the event that any Ash Waste fails to meet the waste acceptance criteria at the Approved Disposal Facility or is otherwise rejected by the Approved Disposal Facility, the Defendants shall within 24 hours of Defendants' receipt of notice of failure or rejection provide notice of such event to the Department. As expeditiously as possible, the Defendants shall (i) determine whether it is practicable to treat the unacceptable Ash Waste in order to satisfy the acceptance criteria of the Approved Disposal Facility, in which case the Defendants shall

arrange for such treatment, followed by disposal in the Approved Disposal Facility; or (ii) identify an alternative permitted facility that is capable of receiving, treating and disposing of such Ash Waste, and notify the Department of the proposed alternative permitted facility and the plan and schedule for transporting, treating and disposal of the affected Ash Waste. The Department will expeditiously review the proposed alternative permitted facility, and related plan and schedule, and the Department will approve the proposed alternative facility if the Department determines that the facility can lawfully and appropriately accept the affected Ash Waste. Within 14 days of the Department's approval of the alternative permitted facility, the Defendants shall make all necessary arrangements for the transportation, treatment and disposal of the affected Ash Waste at the alternative permitted facility, and complete all such work in accordance with the plan and schedule submitted to and approved by the Department.

6. The Department shall implement the following tasks described in the Revised Closure Plan, as more specifically set forth in the referenced Sections of the Approved Closure Plan or in Exhibit 1, and in Exhibit 3 (collectively, the "Department Work"):

(a) Contractor mobilization and Site set-up, excavation and removal of the Ash Waste.

(b) Staging and preparation of the Ash Waste in a manner that complies with the moisture content acceptance criteria at the Approved Disposal Facility; and

loading of the Ash Waste into lined, covered trucks (Sections 5.1 and 5.3 and Exhibit 1)

(c) Transportation of the Ash Waste to the Alaron transload facility at Wampum, Pennsylvania (Exhibit 1). Except for the last loads, the individual truck weight or volume per truck must be at least 24 tons or 24 cubic yards and shall not exceed 27 tons or 26 cubic yards, in order to allow 4 truckloads to be loaded per rail gondola car. Ash Waste may be delivered to the Alaron transload facility between 7:30 am and 4 pm Eastern standard time on weekdays when the facility is open.

(d) Implementation of the health and safety requirements and any necessary radiological monitoring for the tasks comprising the Department Work (Section 5.11, Exhibits 1 and 3)

(e) Installation of temporary erosion and sedimentation controls at the Site and maintenance of those controls until completion of excavation, preparation and transportation from the Site of the Ash Waste (Section 5.9)

(f) Procurement of all necessary road bonds and permits regarding transportation of trucks on the Allegheny Township road adjacent to the Site (Exhibit 3)

7. **Schedule Coordination**.

a. The Parties shall complete the Department Work and that portion of the Defendant Work described in Paragraph 5(b), (c), and (d), in accordance with the schedules set forth in Exhibit 2 and Exhibit 3, with the objective of completing such work by December 31,

2006.

b. The Parties recognize that the scheduling and performance of tasks comprising the Department Work and the Defendant Work must be closely coordinated, and that the timing of certain portions of the Defendant Work is dependent upon performance of the Department Work. The Department Project Coordinator and the Defendant Project Coordinator shall closely confer concerning the proposed scheduling of all Department Work and Defendant Work.

c. At least thirty (30) days prior to the commencement of the Department Work, the Department Coordinator shall advise the Defendant Project Coordinator of the proposed schedule of Department Work (including the anticipated amounts of Ash Waste to be transported and delivered to the Alaron facility in each week. The Defendant Project Coordinator shall promptly review the proposed schedule of Department Work, and shall promptly advise the Department Project Coordinator of any concerns.

d. Within seven (7) days of receiving the Department's proposed schedule for the Department Work, the Defendant Project Coordinator shall provide the Department Project Coordinator a proposed schedule for the Defendant Work for review and approval.

e. The Department Project Coordinator and the Defendant Project Coordinator shall confer at least weekly to assure continued coordination of the respective schedules for the Department Work and the Defendant Work.

f. At least fourteen (14) days prior to the beginning of each week in which Ash Material is to be transported from the Site to the Alaron transload facility, the Department Project Coordinator shall provide the Defendant Project Coordinator with a firm schedule of the amounts to be delivered to the Alaron transload facility in such week.

g. The Department Project Coordinator shall have the right to approve adjustments to the Department Work schedule and the Defendant Work schedule, which adjustments shall, upon approval by the Department Project Coordinator, be incorporated herein.

***Miscellaneous***

8. **Site Use and Access**. Upon execution of this Consent Decree by the Parties, as owner of the Site, the Authority shall provide the Department and its contractors office space, power and access at all reasonable times to the Site for the purpose of conducting any activity related to this Consent Decree, including but not limited to: (a) implementation of the Department Work, and monitoring the Defendants' implementation of the Defendant Work; (b) verifying any data or information submitted to the Department; (c) conducting investigations relating to contamination at or near the Site; (d) obtaining samples; (e) inspecting and copying records, operating logs, contracts or other documents maintained or generated by the Defendants or their agents; or (f) assessing the Defendants' compliance with this Consent Decree .

9. **Stipulated Civil Penalties**.

a. In the event the Defendants fail to implement the Defendant Work in a timely manner in accordance with the schedules applicable to the Defendant Work, the Defendants jointly shall be in violation of this Consent Decree and, in addition to other applicable remedies, Defendants shall pay a civil penalty in the amount of $500 per day for the first 15 days of each such violation and $1,000 per day for every day of violation after the first 15 days of each such violation. In the event the Defendants fail to comply in a timely manner with any other term or provision of this Consent Decree, the Defendants jointly shall be in violation of this Consent Decree and, in addition to other applicable remedies, Defendants shall pay a civil penalty in the amount $1,000 per day for each such violation.

b. Stipulated civil penalty payments shall be payable monthly on or before the fifteenth day of each succeeding month, and shall be forwarded as set forth in Paragraph 19.a (Notice to Department).

c. Any payment under this paragraph shall neither waive the Defendants' duty to meet its obligations under this Consent Decree nor preclude the Department from commencing an action to compel Defendants' compliance with the terms and conditions of this Consent Decree. The payment resolves only Defendants' liability for civil penalties arising from the violations of this Consent Decree for which the payment is made.

10. **Effect on Third Parties**. Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a party to this Consent Decree. Nothing in this Consent Decree is intended as a covenant not to sue or a release from liability for any person or entity not a signatory to this Consent Decree. The Department and the Defendants expressly reserve all rights (including, but not limited to, any right to contribution), defenses, claims, demands, and causes of action, either judicial or administrative, past or future, in law or equity, for any matter arising at the Site, against any person or entity not a party to this Consent Decree.

11. **Additional Remedies**.

a. In the event Defendants fail to comply with any provision of this Consent Decree, the Department may, in addition to the remedies prescribed herein, pursue any remedy available for a violation of an order of the Department, including an action to enforce this Consent Decree or the Revised Closure Plan in any Pennsylvania state court of competent jurisdiction.

b. The remedies provided by this paragraph and Paragraph 9 (Stipulated Civil Penalties) are cumulative and the exercise of one does not preclude the exercise of any other. The failure of the Department to pursue any remedy shall not be deemed to be a waiver of that remedy. The payment of a stipulated civil penalty, however, shall preclude any further assessment of civil penalties for the violation for which the stipulated penalty is paid.

c. The Department reserves the right to require additional measures to achieve compliance with applicable law. Defendants reserve the right to challenge any action which the Department may take to require those measures.

12. **Covenant Not To Sue By Defendants**. Each Defendant hereby covenants not to sue and agrees not to assert any claims or causes of action against the Commonwealth of Pennsylvania, including any department, agency, or instrumentality thereof, or the Hazardous Sites Cleanup Fund, with respect to the Site, including, but not limited to, any direct or indirect claim related to response costs, past or future, and including oversight costs, under Sections 107 and 113 of CERCLA, 42 U.S.C. §§ 9607 and 9613, or under HSCA, or any other provision of law; or any claims arising out of the response activities at the Site. The Defendants shall not assert any claims for reimbursement, contribution and/or indemnity from the Pennsylvania Hazardous Sites Cleanup Fund for matters arising from the release or threatened release of hazardous substances at the Site, arising out of any response actions conducted by or authorized by the Parties at or related to the Site, or arising out of this Consent Decree. The Defendants waive any claims or defenses that they may have regarding the application of Sections 708, 709 or 1301 of HSCA, 35 P.S. §§ 6020.708, 6020.709, or 6020.1301, for matters arising from the release or threatened release of hazardous substances at the Site, arising out of any response action at the Site, or arising out of this Consent Decree. Specifically, the Defendants will not

assert any claim that the Department Work was inappropriate or not authorized by HSCA or the Pennsylvania Environmental Statutes. All Parties agree that performance of the Department Work is and will be consistent with the NCP.

13. **Department Waiver of Certain Claims**.

a. In consideration of the actions that will be performed by Defendants under this Consent Decree, and except as specifically provided in Paragraph 13.b, the Department hereby waives and covenants not to sue Defendants pursuant to CERCLA, HSCA or any other of the Pennsylvania Environmental Statutes, any claim for (i) recovery of response costs incurred by the Department prior to the entry of this Consent Decree; (ii) recovery of response costs associated with performance of the Department Work; or (iii) oversight costs. This waiver and covenant not to sue shall take effect upon entry of this Consent Decree.

b. This waiver and covenant not to sue is conditioned upon the performance by Defendants of their obligations under this Consent Decree. In addition, this waiver and covenant not to sue regarding the recovery of response costs associated with performance of the Department Work is conditioned on the Defendant Work described in subparagraphs 5(b), (c), and (d), being performed by December 31, 2006, unless excused by Force Majeure or the cause of the Defendants' non-performance or delay in performance is attributable to the Department Work being performed untimely.

c. The covenant not to sue set forth in Paragraph 13(a) extends only to (i) the Defendants; and (ii) their current and former shareholders, officers, directors, employees, partners, successors and assigns, to the extent that their liability with regard to the Site is derived from the actions of the Defendant to which they are related, and does not extend to any other person.

14. **Effect Of Settlement; Contribution Protection**. The Parties agree, and by entering this Consent Decree this Court finds, that the Defendants, and their current and former shareholders, officers, directors, employees, partners, successors and assigns to the extent that their liability with regard to the Site is derived from the actions of the Defendant to which they are related, are entitled, as of the Effective Date of this Consent Decree, to contribution protection from actions or claims as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and Section 705(c)(2) of HSCA, 35 P.S. § 6020.705(c)(2), for matters addressed in this Consent Decree. For purposes of this Paragraph and for purposes of Sections 113(f)(2) and 122(g)(5) of CERCLA, 42 U.S.C. §§ 9613(f)(2) and 9622(g)(5), and Section 705(c)(2) of HSCA, 35 P.S. § 6020.705(c)(2), the term "matters addressed" shall mean liability for all response actions taken and to be taken by any person at the Site and all response costs, incurred and to be incurred by the Commonwealth of Pennsylvania or any other person at or relating to the Site.

15. **Claims against Defendants**. Each Defendant acknowledges that the Department has no obligation to defend it in any suit, demand or claim for contribution for any matters arising out of this Consent Decree.

16. **Enforcement**. This Court shall retain jurisdiction for the purpose of the enforcement of this Consent Decree. The Department also may enforce the Defendants' obligations hereunder in a Pennsylvania court of competent jurisdiction.

17. **Force Majeure**. In the event that the Defendants are prevented from complying in a timely manner with any time limit imposed in this solely because of a strike, fire, flood, act of God, or other circumstances beyond the Defendants' reasonable control and which the Defendants, by the exercise of all reasonable diligence, are unable to prevent or mitigate, the

Defendants may petition the Department for an extension of time. An increase in the cost of performing the obligations set forth in this Consent Decree shall not constitute circumstances beyond the Defendants' control. The Defendants expressly agree that their economic inability to comply with any of the obligations of this Consent Decree shall not be the sole grounds for any extension of time under this Paragraph.

a. The Defendants shall only be entitled to the benefits of this Paragraph if they notify the Department within one (1) business day by telephone and within five (5) business days in writing of the date they become aware or reasonably should have become aware of the circumstances impeding performance. The written submission shall include all related documentation, as well as a written statement made subject to penalty for falsification by the Defendants specifying the reasons for the delay, the expected duration of the delay, and the efforts which have been made and are being made by the Defendants to minimize the length of the delay. The Defendants' failure to comply with the requirements of this Paragraph specifically and in a timely fashion shall render this Paragraph null and of no effect as to the particular incident involved.

b. Within five (5) business days after receipt of the Defendants' written statement, the Department shall decide whether to grant all or part of the extension requested on the basis of all documentation submitted by the Defendants and other information available to the Department. Only a letter that has been signed by the Department and its counsel shall constitute an extension under this Paragraph.

c. The Defendants shall have the burden of proof as to the justification for the extension and the length of such extension pursuant to this Paragraph, both to the Department

and in the event that compliance with the terms and conditions of this becomes an issue in any subsequent litigation. Such burden of proof shall be by a preponderance of the evidence.

18. **Project Coordinators**.

a. The Department Project Coordinator and Alternate Project Coordinator for this Site are:

Terry Goodwald, Project Coordinator
James Shack, Alternative Project Coordinator
Environmental Cleanup Program
Pennsylvania Department of Environmental Protection
Southwest Regional Office
400 Waterfront Drive
Pittsburgh, PA 15222-4745

Phone: (412) 442-4133
Fax: (412) 442-4194
E-mail: tgoodwald@state.pa.us
jshack@state.pa.us

b. The Defendant Project Coordinator and Alternate Project Coordinator for this Site are:

Project Coordinator:

Robert N. Kossak
Manager
Kiski Valley Water Pollution Control Authority
1361 School Road
Leechburg, PA 15656
Phone: (724) 568-3655
Fax: (724) 568-3554
E-mail: bkossak@kvwpca.com

Alternate Project Coordinator:

Theodore Adams
President
T.G. Adams and Associates, Inc.
11 West Main Street
Springville, NY 14141
Phone: (716) 592-3431
Fax: (716) 592-3439
E-mail: TGAdams01@aol.com

c. If a Project Coordinator or Alternate Project Coordinator initially designated is changed, the identity of the successor will be given to the other Parties at least five (5) working days before the change occurs, unless impracticable, but in no event later than the actual day the change is made.

d. The Defendant Project Coordinator and Alternate Project Coordinator shall be subject to acceptance or disapproval by the Department and shall have the technical expertise sufficient to adequately oversee all aspects of the Defendant Work. The Defendant Project Coordinator and Alternate Project Coordinator shall not be an attorney for any Defendant in this matter. The Defendant Project Coordinator and Alternate Project Coordinator may assign other representatives, including contractors, to serve as representatives for oversight of performance of daily operations during remedial activities.

19. <u>General Notice Terms</u>. Whenever, under the terms of this Consent Decree, written notice is required to be given or a document is required to be sent by one of the Parties to another, it shall be directed to the addresses specified below, unless otherwise notified.

a. ***Notice to Department.*** All correspondence with the Department concerning this Consent Decree shall reference the Site and shall be addressed to:

Terry Goodwald
Environmental Cleanup Program
Pennsylvania Department of Environmental Protection
Southwest Regional Office
400 Waterfront Drive
Pittsburgh, PA 15222-4745

Phone: (412) 442-4133
Fax: (412) 442-4194
E-mail: tgoodwald@state.pa.us

A copy of all correspondence with the Department concerning this Consent Decree shall reference the Site and shall be addressed to:

Edward S. Stokan, Esquire
Assistant Counsel
Department of Environmental Protection
400 Waterfront Drive
Pittsburgh, PA 15222-4745

Phone: (412) 442-4262
Fax: (412) 442-4274
E-mail: estokan@state.pa.us

b. ***Notice to BWXT and B&W.*** All correspondence with BWXT and B&W concerning this Consent Decree shall reference the Site and shall be addressed to:

Charles F. Seabolt, Esq.
BWX Technologies, Inc.
P.O. Box 11165
Lynchburg, VA 24506-1165
or
2016 Mt. Athos Road
Lynchburg, VA 24504-5447

Phone: (434) 522-5769
Fax: (434) 522-6950
E-mail: cfseabolt@bwxt.com

and

Michael Grady
General Counsel
Babcock & Wilcox Company, The
20 S. Van Buren Avenue
P.O. Box 351
Barberton, OH 44203-0351
Phone: (330) 860-1471
Fax: (330) 860-1057
E-mail: mjgrady@babcock.com

A copy of all correspondence with the BWXT and B&W concerning this Consent Decree shall reference the Site and shall be addressed to:

R. Timothy Weston
Kirkpatrick & Lockhart Nicholson Graham LLP
17 North Second Street, 18th Floor
Harrisburg, PA 17101

Phone: (717) 231-4504
Fax: (717) 231-4501
E-mail: tweston@klng.com

In addition, BWXT and B&W agree that the service of any notice or any legal process for any purpose under this Consent Decree, including its enforcement, may be made by mailing a copy by certified mail, return receipt requested, or by any overnight delivery service with standard tracking, to its attorney, whose name and address are contained in this Paragraph.

c. **Notice to Authority**. All correspondence with the Authority concerning this Consent Decree shall reference the Site and shall be addressed to:

Robert N. Kossak, Manager
Kiski Valley Water Pollution Control Authority
1361 School Road
Leechburg, PA 15656

Phone: (724) 568-3655
Fax: (724) 568-3554
E-mail: bkossak@kvwpca.com

A copy of all correspondence with the Authority concerning this Consent Decree shall reference the Site and shall be addressed to:

Timothy J. Geary, Esq.
Geary & Loperfito
158 Grant Avenue
Vandergrift, PA 15690

Phone: (724) 568-3694
Fax: (724) 568-2500
E-mail: tjg@gllawyers.com

In addition, the Authority agrees that the service of any notice or any legal process for any purpose under this Consent Decree, including its enforcement, may be made by mailing a copy by certified mail, return receipt requested, or by any overnight delivery service with standard tracking, to its attorney, whose name and address are contained in this Paragraph.

20. **Liability of Operator**. The Defendants shall be liable for any violations of the Consent Decree, including those caused by, contributed to, or allowed by their respective officers agents, employees, or contractors. The Defendants also shall be liable for any violation of this Consent Decree caused by, contributed to, or allowed by their respective successors and assigns.

21. **Transfer of Site**.

a. The duties and obligations under this Consent Decree shall not be modified, diminished, terminated or otherwise altered by the transfer of any legal or equitable interest in the Site or any part thereof.

b. If the Authority intends to transfer any legal or equitable interest in the Site the Authority shall serve a copy of this Consent Decree upon the prospective transferee of the legal and equitable interest at least thirty (30) days prior to the contemplated transfer and shall simultaneously inform the Department of such intent.

22. **Attorney's Fees**. Among the Parties, the Parties agree to bear their respective attorney's fees, expenses and other costs in the prosecution or defense of this matter, or any related matters, arising prior to execution of this Consent Decree.

23. **Modification**. No changes, additions, modification, or amendments of this Consent Decree shall be effective unless they are set out in writing and signed by the Parties hereto.

24. **Entire Agreement**. This Consent Decree shall constitute the entire integrated agreement of the parties. No prior or contemporaneous communications or prior drafts shall be relevant or admissible for purposes of determining the meaning or extent of any provisions herein in any litigation or any other proceeding.

25. **Titles**. A title used at the beginning of any section of this Consent Decree is provided solely for the purpose of identification and shall not be used to interpret this Consent Decree.

26. **Severability**. The paragraphs of this Consent Decree shall be severable, and should any part hereof be declared invalid or unenforceable, the remainder shall continue in full force and effect among the Parties.

27. **Public Notice, Meeting and Comment.** The Department shall publish a notice in the *Pennsylvania Bulletin* and a *local newspaper* containing a summary of the terms of this Consent Decree. The Department will hold a public meeting in the vicinity of the Site between 14 and 21 days after publication of notice in the *Pennsylvania Bulletin.* The Department shall receive and consider comments relating solely to the revisions to the Approved Closure Plan, as set forth in this Consent Decree, for 30 days from publication of this notice in the *Pennsylvania Bulletin.* The Department reserves the right to withdraw its consent to this Consent Decree, if the comments disclose facts or considerations which indicate that this Consent Decree is inappropriate, improper, or not in the public interest. If the Department withdraws, it shall rescind Exhibit 1, and the terms of this Consent Decree shall be void, shall have no force or effect, and shall not be used as evidence in any litigation or any other proceeding.

28. **Effective Date**. The Effective Date of this Consent Decree shall be the date of entry by this Court. The Department may dismiss without prejudice all or part of the Complaint against any or all of the Defendants, if the Court elects not to enter this Consent Decree.

29. **Execution in Counterparts**. This Consent Decree shall be executed in multiple counterparts. Each counterpart shall be deemed to be an original, but all counterparts shall constitute one and the same instrument.

30. **Resolution**. Attached hereto as Exhibit 4 is a resolution of the Board of the Authority authorizing its counsel below to enter into this Consent Decree on its behalf.

SO ORDERED THIS 4th DAY OF Oct, 2006.

[signature]

United States District Judge

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *Commonwealth of Pennsylvania Department of Environmental Protection v. BWX Technologies, Inc., The Babcock & Wilcox Company, and Kiski Valley Water Pollution Control Authority*, relating to the KVWPCA Ash Lagoon Site.

FOR THE COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF ENVIRONMENTAL PROTECTION

Date: August 21, 2006

Edward S. Stokan for

SUSAN SHINKMAN
Chief Counsel
Department of Environmental Protection
400 Market Street, 16th Floor
Harrisburg, PA 17105-2063
(717) 787-4449

MICHAEL BUCHWACH
Assistant Counsel
Department of Environmental Protection
400 Market Street, 9th Floor
Harrisburg, PA 17105-2063
(717) 787-9372

EDWARD S. STOKAN
Assistant Counsel
Department of Environmental Protection
400 Waterfront Drive
Pittsburgh, PA 15222-4745
(412) 442- 4262

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *Commonwealth of Pennsylvania Department of Environmental Protection v. BWX Technologies, Inc., The Babcock & Wilcox Company, and Kiski Valley Water Pollution Control Authority*, relating to the KVWPCA Ash Lagoon Site.

FOR BWX TECHNOLOGIES, INC.

Date: 21 AUGUST 2006

[signature]

CHARLES F. SEABOLT
Chief Counsel
BWX Technologies, Inc.
P.O. Box 11165
Lynchburg, VA 24506-1165
(434) 522-5769

[signature]

R. TIMOTHY WESTON
Kirkpatrick & Lockhart Nicholson Graham LLP
17 North Third Street, 18th Floor
Harrisburg, PA 17101
(717) 231-4504

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *Commonwealth of Pennsylvania Department of Environmental Protection v. BWX Technologies, Inc., The Babcock & Wilcox Company, and Kiski Valley Water Pollution Control Authority,* relating to the KVWPCA Ash Lagoon Site.

FOR THE BABCOCK & WILCOX COMPANY

Date: August 21, 2006

MICHAEL J. GRADY
Assistant General Counsel
The Babcock & Wilcox Company
20 South Van Buren Avenue
Barberton, OH 44203
(330) 860-1471

R. TIMOTHY WESTON
Kirkpatrick & Lockhart Nicholson Graham LLP
17 North Third Street, 18th Floor
Harrisburg, PA 17101
(717) 231-4504

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *Commonwealth of Pennsylvania Department of Environmental Protection v. BWX Technologies, Inc., The Babcock & Wilcox Company, and Kiski Valley Water Pollution Control Authority*, relating to the KVWPCA Ash Lagoon Site.

FOR THE KISKI VALLEY WATER POLLUTION CONTROL AUTHORITY

Date: 8/21/06

LARRY D. LOPERFITO
Geary and Loperfito, LLC
158 Grant Avenue
Vandergrift, PA 15690
(724) 568-3694

Geoffrey Barnes, Esq.
Squire, Sanders & Dempsey L.L.P.
4900 Key Tower
127 Public Square
Cleveland, OH 44114-1304
(216) 479-8646

# Exhibit 1



Pennsylvania Department of Environmental Protection

**400 Waterfront Drive**
**Pittsburgh, PA 15222-4745**
August 25, 2006

**Southwest Regional Office**

412-442-4000
Fax 412-442-4194

**CERTIFIED MAIL NO. 7003 2260 0000 3133 7403**

Robert N. Kossak
General Manager
Kiski Valley Water Pollution Control Authority
1361 School Road
Leechburg, PA 15656

Re: Closure Plan Revisions
Incinerator Ash Lagoon
Kiski Valley Water Pollution Control Authority
(KVWPCA)
Allegheny Township
Westmoreland County
I.D. No. 400136

Dear Mr. Kossak:

The Department of Environmental Protection (DEP) is hereby modifying the Incinerator Ash Lagoon Closure Plan approval issued on October 26, 2005. The following conditions supercede and replace the corresponding numbered conditions of the October 26, 2005 letter. All remaining conditions of the closure plan remain in effect.

3. KVWPCA shall provide independent construction quality assurance oversight during closure activities to ensure and document adherence to the approved plans.

7. The following facilities are approved to accept the incinerator ash: Alaron transloading facility, in Wampum, Pennsylvania, for ultimate disposal at US Ecology waste disposal facility in Robstown, Texas.

   Approval of the above facilities supercedes the approval for disposal at a Pennsylvania municipal waste landfill. All references to the municipal waste landfill within the approved plans shall now be interpreted to reference the above facilities.





Due to the change in disposal facility, the following approvals associated with the municipal waste facility are no longer applicable:

a. Provisions for blending of the ash unless specifically needed to meet the paint filter test requirements and/or the moisture content criteria, if any, of the facilities listed in this condition
b. Municipal waste landfill dose assessments.
c. Municipal waste truck radiation monitoring.
d. Municipal waste manifesting.

8. All waste vehicles shall be in compliance with the Waste Transportation Safety Act and U.S. Department of Transportation (DOT), PHMSA - the Pipeline and Hazardous Materials Safety Administration

9. All ash transported from the KVWPCA ash lagoon shall meet the following requirements:.

a. All loads shall meet the applicable requirements of Title 49 CFR, subtitle B, Chapter I, subchapter C (Hazardous Materials Regulations) and shall meet any special requirements of ALARON transport facility.

b. All loads shall be transported in lined vehicles covered with waterproof tarps or otherwise completely enclosed.

c. The fugitive emission standards adopted under Chapter 123 regulations (Standards for Contaminants) issued under Air Pollution Control Act, the Act of January 8, 1960, P.L. 2119, 35 P.S. § 4005, particularly those in 25 Pa. Code §§ 123.1 and 123.2 shall be complied with.

14. Collateral Bond No. 001R0289 from the First Commonwealth Bank, dated September 27, 2005 in the amount of $10,000.00 and executed between KVWPCA and the Department is approved in support of this closure plan approval.

Compliance with the limitations and stipulations have been set forth in this approval is mandatory. You have the right to appeal any limitations or stipulations as stated on the approval.

Any person aggrieved by this action may appeal, pursuant to Section 4 of the Environmental Hearing Board Act, 35 P.S. Section 7514, and the Administrative Agency Law, 2 Pa. C.S., Chapter 5A, to the Environmental Hearing Board, Second Floor, Rachel Carson State Office Building, 400 Market Street, P.O. Box 8457, Harrisburg, PA 17105-8457, 717-787-3483. TDD users may contact the Board through the Pennsylvania Relay Service, 800-654-5984. Appeals must be filed with the Environmental

Hearing Board within 30 days of receipt of written notice of this action unless the appropriate statute provides a different time period. Copies of the appeal form and the Board's rules of practice and procedure may be obtained from the Board. The appeal form and the Board's rules of practice and procedure are also available in braille or on audiotape from the Secretary to the Board at 717-787-3483.

This paragraph does not, in and of itself, create any right of appeal beyond that permitted by applicable statutes and decisional law.

IF YOU WANT TO CHALLENGE THIS ACTION, YOUR APPEAL MUST REACH THE BOARD WITHIN 30 DAYS. YOU DO NOT NEED A LAWYER TO FILE AN APPEAL WITH THE BOARD.

IMPORTANT LEGAL RIGHTS ARE AT STAKE, HOWEVER, SO YOU SHOULD SHOW THIS DOCUMENT TO A LAWYER AT ONCE. IF YOU CANNOT AFFORD A LAWYER, YOU MAY QUALIFY FOR FREE PRO BONO REPRESENTATION. CALL THE SECRETARY TO THE BOARD (717-787-3483) FOR MORE INFORMATION.

If you have any questions about the enclosed closure plan approval or requirements of the Solid Waste Management Act, please contact Dave Eberle at 412-442-4156.

Sincerely,

Michael G. Forbeck, P.E.
Regional Manager
Waste Management

cc: Westmoreland County - **CERTIFIED MAIL NO. 7003 2260 0000 3133 7397**
Allegheny Township - **CERTIFIED MAIL NO. 7003 2260 0000 3133 7380**

bcc: Region
Chron
M. Forbeck
D. McDaniel
D. Eberle
D. Shearer
K. Halloran
E. Stokan – OCC
G. Hartenstein – Central
R. Maiers - Central
M. Buchwach - Central

RECEIVED AUG 2 4 2006

MGF:dk

# Exhibit 2

**EXHIBIT 2 – DEFENDANT WORK ELEMENTS AND SCHEDULE**

| *Work Element* | *Revised Closure Plan Reference* | *Schedule* |
|---|---|---|
| 2.1. Enter into agreement(s) for transportation of Ash Waste from Alaron Transload Facility in Wampum, PA to Approved Disposal Facility and for disposal of Ash Waste at Approved Disposal Facility | | Within 15 days of effective date of Consent Decree. |
| 2.2. Provide proposed schedule of Defendant Work to Department Project Coordinator | | Within 7 days of receiving Department's proposed schedule of Department Work per Task of Exhibit 3. |
| 2.3. Attend and participate in pre-construction meeting with Department remedial action contractor performing Department Work (see Exhibit 3, Element 3.3). | §5.1.4 | Upon 7 days prior notice from Department Project Coordinator |
| 2.4. Conduct dewatering of ash lagoon (drainage of free standing water on the surface of the lagoon impoundment; pump such free standing water to the KVWPCA wastewater treatment plant for treatment. | §5.2 | Prior to scheduled date for commencement of Ash Waste excavation. |
| 2.5. Pump any free liquids collected from staged Ash Waste (see Exhibit 3, Element 3.7) to the KVWPCA wastewater treatment plant for treatment. | §5.3 | As needed. |
| 2.6. Pump any collected excavation equipment and transport vehicle decontamination wash water and solids (see Exhibit 3, §3.12) to the KVWPCA wastewater treatment plant for treatment, and otherwise provide for disposal of | §5.3 | |

| | | | |
|---|---|---|---|
| | any decontamination wastes at a permitted facility. | | |
| 2.7. | Pump and convey any stormwater collected in erosion and sedimentation control facilities to KVWPCA wastewater treatment plant for treatment, until the Department has approved verification sampling results per §5.6.3 of Revised Closure Plan. | §5.9 | |
| 2.8. | Load the Ash Waste delivered to the Alaron Transload Facility into rail cars equipped with "burrito" liners. | §5.4, as amended by Exhibit 1. | Within 7 days of delivery of material shipments to the Alaron Transload Facility. |
| 2.9. | Provide for transport of such Ash Waste from the Alaron Transload Facility to the designated offloading site of the Approved Disposal Facility. | | Within 7 days of loading of shipments into rail cars. |
| 2.10. | Offload the Ash Waste received at the designated offloading site of the Approved Disposal Facility for transfer to the disposal unit. | | Within 7 days of receipt of rail cars at the designated offloading site of the Approved Disposal Facility. |
| 2.11. | Dispose of the Ash Waste at the Approved Disposal Facility (except as otherwise provided in ¶ 7(m) of the Consent Decree). | §5.4 | Within 10 days following receipt of rail cars at the designated offloading site of the Approved Disposal Facility. |
| 2.12. | Provide to Department certificate of disposal of Ash Waste at the Approved Disposal Facility (except as otherwise provided in ¶ 7(m) of the Consent Decree). | | Within 30 days following receipt of the last rail car(s) containing Ash Waste at the designated offloading site of the Approved Disposal Facility. |
| 2.13. | Maintain all temporary erosion and sedimentation controls at the Site following completion of Department Work. | §5.9 | From receipt of notice of completion of Department Work (Exhibit 3, Element 3.14) until establishment of a stabilized vegetative cover. |

| | | |
|---|---|---|
| 2.14. Mobilize Defendant's remedial action contractor to undertake on-site work related to Elements 2.15 and 2.16. | | 30 days following notice of completion of Department Work (Exhibit 3, Element 3.14) |
| 2.15. Remove the 4-inch effluent discharge pipe into the ash lagoon and the 16-inch half section pipe. Remove existing steel bridge and concrete pier. Decontaminate piping, bridge and pier material with high pressure water spray, and radiologically survey piping to confirm decontamination. If such discharge piping and pier materials cannot be successfully decontaminated, such materials shall be disposed of at the Approved Disposal Site or another permitted facility approved by the Department that is capable of receiving, treating and disposing of such material. | §5.5 | 45 days following notice of completion of Department Work (Exhibit 3, Element 3.14) |
| 2.16. Lower top elevation of 12-inch overflow pipe; decontaminate line using KVWPCA sewer jet. | §5.5 & Figure 5810-D2. | 45 days following notice of completion of Department Work (Exhibit 3, Element 3.14) |
| 2.17. Conduct attainment testing for Act 2 conventional parameters and final radiological site status survey; submit interim verification results to Department for review. | §5.6 | 80 days following notice of completion of Department Work (Exhibit 3, Element 3.14) |
| 2.18. Backfill, re-contour and conduct final grading of former lagoon area. | §5.7 | 45 days following notice of Department approval of verification testing results. |
| 2.19. Conduct revegetation activities: Conduct samples from soil cover to determine fertilization and liming requirements; apply lime and fertilizer as needed, and apply selected seed mixture to disturbed portions of site; cover with straw or hay mulch. | §5.8 and Section III | Complete initial revegetation activities within 7 days of Work Element 2.18. Provided that if regrading activities are completed during winter / non-growing season period, revegetation measures may be deferred, in which case other temporary stabilization measures shall be taken pending commencement of growing season. |

| | | |
|---|---|---|
| 2.20. If vegetation cover is not well-established within six weeks of completing Work Element 2.20, conduct rework and reseeding as needed. | | |
| 2.21. Maintain Site security throughout Department Work and Defendant Work. | §5.11.2 | |
| 2.22. Implement Health and Safety Plan and radiological monitoring associated with all work elements of Defendant Work. | §VII, §5.11 | |
| 2.23. Prepare and submit to Department a closure report under direction of a professional engineer licensed in Pennsylvania, and a Certification of Facility Construction Activity Form 37 as an Item 9 final closure | §5.10 | 120 days following notice of Department approval of verification testing results, or 90 days following commencement of growing season. |
| 2.24. Conduct post-closure groundwater monitoring for four quarters to demonstrate attainment of Act 2 media specific concentrations for non-residential uses. | §7.1 | |
| 2.25. During one year period following Department approval of Item 9 closure certification, conduct post-closure inspection of revegetated areas; correct major cracks or gullies, refill with suitable material, compact and reseed affected areas. | §7.5 | |
| 2.26. Submit to the Department Certification of Facility Construction Activity Form 37 as an Item 10 final closure. | §7.1 | |
| 2.27. Abandon and close groundwater monitoring network. | §7.1 | 60 days following Department approval of final closure certification. |

# Exhibit 3

**EXHIBIT 3 – DEPARTMENT WORK ELEMENTS AND SCHEDULE**

The Department will perform the following work elements, in a manner consistent with the referenced provisions of the Revised Closure Plan (as amended by Exhibit 1), and pursuant to the schedule set forth below:

| | *Work Element* | *Revised Closure Plan Reference* | *Schedule* |
|---|---|---|---|
| 3.1. | Provide proposed schedule of Department Work to Defendant Project Coordinator | | |
| 3.2. | Engage remedial action contractor to perform Department Work at Site. | | Within 15 days of effective date of Consent Decree. |
| 3.3. | Conduct pre-construction meeting with Department remedial action contractor. | §5.1.4 | |
| 3.4. | Establish work zone and clean zone, equipment decontamination area, and procedures/logistics for personnel and equipment entering and exiting the work zone. | §5.1.5 | |
| 3.5. | Install temporary erosion and sedimentation control measures in accordance with approved erosion and sedimentation control plan. Maintain temporary erosion and sedimentation control measures until notice of completion of Department Work per Work Element 3.14. | §IV; §5.9 | |
| 3.6. | Excavate Ash Waste from ash lagoon. | §5.3 | |
| 3.7. | Stage Ash Waste, if necessary, to drain and remove free liquids; collect free liquids (for transfer to KVWPCA wastewater treatment plant), in order to meet moisture | §§5.1 and 5.3 | |

| | | |
|---|---|---|
| content acceptance criteria of Approved Disposal Facility. | | |
| 3.8. Load Ash Waste into vehicles meeting Act 90 Waste Transportation Safety program requirements. All vehicles will be lined with an impermeable plastic film prior to loading and covered prior to commencement of transportation. | §5.3 | |
| 3.9. Assure all trucks used to transport Ash Waste are properly placarded in accordance with applicable transportation and environmental regulations. | §5.3 | |
| 3.10. Prepare any required waste manifests for the Ash Waste (which manifest will be executed by any authorized representative of the Authority). | §5.3 | |
| 3.11. Transport Ash Wastes to the Alaron Transload Facility at Wampum, PA; and off-load Ash Waste from trucks at the specified location within the Alaron Transload. | §5.3, as amended by Exhibit 1 | Over approximately 6 week period, per schedule coordinated in accordance with § 7 of Consent Decree. |
| 3.12. Decontaminate any equipment utilized in the excavation or transportation of the Ash Waste. Collect and wash water and solids, for handling per Exhibit 2, Element 2.6. | §5.3. | Following completion of use. |
| 3.13. Implement Health and Safety Plan and radiological monitoring associated with all work elements of Department Work. | §VII, §5.11 | |
| 3.14. Provide notice to Defendants of completion of Department Work. | | Upon completion of Work Elements 3.6-3.12. |
| 3.15. Conduct independent walk over to assure the accuracy of the certification of closure. | | |

# Exhibit 4

August 24, 2006

Kiski Valley Water Pollution Control
Control Authority

The undersigned does hereby certify as follows:

1. The undersigned is the duly elected, qualified Secretary of the Kiski Valley Water Pollution Control Authority.

2. The following motion is a true and correct copy of a motion approved by a unanimous vote of the members of the Kiski Valley Water Pollution Control Authority at the advertised regular public meeting held on August 16, 2006 and properly recorded as required by law.

A MOTION was made by Mayer, seconded by Bionc, and unanimously approved to permit the Plant Manager with the support of Squires, Sanders and Dempsey, LLP and Geary and Loperfito, LLC to facilitate completion of and execution of final documents, including but not limited to the following:

1) A Disposal Agreement between KVWPCA and U.S. Ecology, including exhibits and subsequent addenda.

2) A Settlement Agreement between KVWPCA, Babcock and Wilcox, and BWXT including exhibits and subsequent addenda.

3) A consent Agreement between the Pennsylvania Department of Environmental Protection, Babcock and Wilcox, BWXT, and the Kiski Valley Water Pollution Control Authority including exhibits and subsequent addenda.

4) Necessary related documents to complete removal of the contaminated ash from the Authority's ash lagoon and the subsequent closure of the ash lagoon.

5) Grant the authority to the Chairman of the Board of Directors of the Authority to execute said documents.

**IN WITNESS WHEREOF,** I have hereunto placed my hand and the seal of Kiski Valley Water Pollution Control Authority on this 24th day of August, 2006.

(SEAL)

Patricia T. Kaminski
Patricia T. Kaminski, Secretary

# APPENDIX B

**Kiski Valley Water Pollution Control Authority**
**Incinerator Ash Lagoon Closure**
**Allegheny Township, Westmoreland County, Pennsylvania**

On August 25, 2006, the Commonwealth of Pennsylvania, Department of Environmental Protection ("Department") issued a Closure Plan Modification under the Solid Waste Management Act, the Act of July 7, 1980, P.L. 380, 35 P.S. §§ 6018.101-6018.1003, and regulations to close a solid waste processing or disposal area or site.

The Closure Plan Modification relates to **Permit ID No. 400136**, held by the Kiski Valley Water Pollution Control Authority ("Authority"), 1361 School Road, Leechburg, PA 15656, and the closure of the Authority's incinerator ash lagoon located in Allegheny Township, Westmoreland County. The original Closure Plan approved by the Department on October 25, 2005, was prepared following development of a remedial investigation and feasibility study that evaluated a range of alternatives relative to remediation of the site. Several opportunities for public comment and participation were previously provided, including a public hearing held on August 2, 2005, and a 60-day public comment period on the Closure Plan application.

The Closure Plan Modification revises the Closure Plan approved by the Department on October 25, 2005, as follows:

(a) Those parts of the previously approved Closure Plan (Section 5.4 and Section IX) relating to the placement of the ash waste in a Pennsylvania municipal waste landfill are deleted.

(b) The Authority is not required to post an additional bond in the amount of $775,097 as stated in condition 14 of the Department's October 26, 2005 letter to the Authority.

(c) The Ash Waste shall be transported via truck to the Alaron transload facility in Wampum, Pennsylvania and thereafter via rail transportation for disposal at the US Ecology Texas disposal facility in Robstown, Texas.

The Department has entered into a proposed Consent Decree with BWX Technologies, Inc., The Babcock and Wilcox Company, and the Authority calling for the Parties' implementation of the Closure Plan as approved on October 26, 2005 and as revised by the August 25, 2006 Closure Plan Modification.

The Department shall receive and consider comments relating to the revisions contained in the Closure Plan Modification for thirty (30) days from the date of publication of this notice, or through Monday, October 2, 2006. Persons may submit written comments to the Department's Regional Solid Waste Manager, Southwest Regional Office, 400 Waterfront Drive, Pittsburgh, PA 15222-4745. In addition, on Thursday, September 21, 2006, at 6:30 p.m., the Department will hold a public meeting at the meeting room of the Allegheny Township Municipal Building, located at 136 Community Building Road, Leechburg PA 15656.